UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:03cv-530-R

DAVID MASTERSON, et. al.,
PLAINTIFFS

v.

MEADE COUNTY FISCAL COURT, et. al.,
DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on the Defendants' Motion to Dismiss and/or Motion

for Summary Judgment (Docket #53).  The Plaintiffs, David Masterson ("Masterson"), Scott

Davis ("Davis"), and Morris Phillips ("Phillips") have responded (Docket #62).  This matter is

now ripe for adjudication.  For the following reasons, the Defendants' Motion to Dismiss and/or

Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

The Plaintiffs in this matter allege numerous claims against the Defendants, which

include: violation of the Plaintiffs' Constitutional rights of free speech, religion, privacy, due

process, equal protection, and freedom from confiscation of property without just compensation;

violation of 42 U.S.C §1983; violation of the Racketeering and Corrupt Organizations Act

("RICO"), 18 U.S.C. §1961, et. seq., through the commission of mail and wire fraud; and

violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1601, et. seq.  The Defendants

include several individual officials and government entities within Meade County, Kentucky.

The suit has been brought against the individuals in both their individual and official capacities.

Specifically, the Plaintiffs base their claims on an ordinance (830.10) upon which the Meade

County Solid Waste District ("MCSWD") operates, arguing that the actions of the Defendants

violate their rights.  The Plaintiffs allege that the Defendants have exempted certain parts of
Meade County from the jurisdiction of MCSWD, but continue to collect fees from those not
receiving services based upon property ownership taxes.  In addition, the Plaintiffs contend that
the Defendants, acting alone or in concert, used their offices to commit criminal acts, including
mail fraud and wire fraud.  Further, the Plaintiffs assert that the Defendants: unfairly rewarded
friends and political allies; assisted friends by preventing the enforcement of certain ordinances;
collected funds and fees in a disparate manner or through coerciveness; and improperly
confiscated payments and property to which they are not entitled.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure, the district court must accept all of the allegations in the complaint as true, and
construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of Tenn.*,
188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).
Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle him to relief."  *Achterhof v.
Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46
(1957)).  Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact
will not prevent a motion to dismiss.  *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir.
2002).  A "complaint must contain either direct or inferential allegations respecting all the
material elements to sustain a recovery under some viable legal theory."  *Andrews v. Ohio*, 104
F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.
1993)).

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he/she must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. V. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

3

**DISCUSSION**

The Defendants argue that there are four (4) reasons why the Court should dismiss the claims of the Plaintiff and/or grant summary judgment.  First, the Defendants assert that the Plaintiffs have failed to plead the claim of mail fraud and wire fraud under RICO with particularity as mandated by FRCP 9(b); second, the Plaintiffs failed to sufficiently allege a RICO violation; third, the Plaintiffs failed to allege any specific charges in regards to their claims under 42 U.S.C. §1983; and fourth, the Plaintiffs have not alleged appropriate facts to prove a violation of the Fair Debt Collection Practices Act.  The Court will address each of these arguments individually.

**1. Particularity of the Plaintiffs' Claims of Mail and/or Wire Fraud under RICO**

FRCP 9(b) states that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  As applied to RICO, the Sixth Circuit Court of Appeals has determined that RICO plaintiffs must allege in their complaints "the time, place and contents of the misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir.2003).  This requires a plaintiff to describe specific acts of the fraud within the pleadings. *Leeds v. City of Muldraugh, Meade County, KY*, 174 Fed. Appx. 251, 254 (6th Cir. 2006).

In *Bledsoe*, the Sixth Circuit affirmed the decision of the district court in finding that the plaintiff had not sufficiently pled its fraud claim with particularity. *Bledsoe*, 342 F.3d at 643. The Court noted that the plaintiff failed to set forth dates as to the various claims of improper

4

billing, and failed to list the names of individuals involved. *Id.* The Court held that the plaintiff had not provided explicit details to identify what each defendant engaged in to amount to fraudulent conduct. *Id.* The Court reasoned that "the amended complaint often states that 'Defendants' engaged in certain practices, without ever specifying the defendants to which it was referring...[a] [fraud] complaint 'may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.'" *Id.*; *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003)(holding that a complaint that fails to identify specific parties who committed fraudulent acts requires dismissal under FRCP 9(b)).

In the instant case, the Plaintiffs' complaint and more definite statement do not meet the particularity requirement as set forth in FRCP 9(b). In the complaint, paragraphs 21 and 22 indicate that the Plaintiffs allege the Defendants' activities have taken place and continue to take place in Meade County, Kentucky. In addition, paragraph 22 notes that the Plaintiffs believe the activities by the Defendants affect interstate commerce. Meanwhile, paragraphs 26-32 provide some detail concerning the alleged mail and wire fraud activities of the Defendants. Those paragraphs generally note the schemes that the Defendants allegedly use, as well as the means by which the Defendants act upon their illegal activities, by use of the United States Postal Service to send out their bills, and through contacts with local media outlets to eliminate criticism. Paragraphs 31 and 32 indicate the general injuries sustained by the alleged fraudulent actions, and state that the Plaintiffs seek a financial sum greater than the jurisdictional minimum. The more definite statement claims that the Defendants committed wire fraud through the use of the

5

telephone, fax, and email, and mail fraud through the United States Postal Service.

However, similar to *Bledsoe*, nowhere within the complaint and more definite statement do the Plaintiffs identify with particularity the individual Defendants who committed the alleged fraudulent acts.  In *Bledsoe*, the Court held that a complaint alleging fraud "should provide fair notice to Defendants and enable them to 'prepare an informed pleading responsive to the specific allegations of fraud.'" *Bledsoe* at 643 (citing *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999)).  The Plaintiffs must plead more than a generalized grievance against a collective group of Defendants in order to meet the requirements of FRCP 9(b).  Here, the Plaintiffs have not provided the specific Defendants with that fair notice.  Accordingly, the Court finds that the allegations within the complaint fail to comply with Rule 9(b), and therefore, the RICO claims of mail fraud and wire fraud are dismissed.

### 2. Sufficiency of the Claims for a RICO Violation

Assuming that the Plaintiffs have met the particularity requirement of their RICO claims set out by FRCP 9(b), the Defendants nonetheless contend that the Plaintiffs have failed to properly assert a claim under RICO, 18 U.S.C. §1962.  In their motion, the Defendants review each of the four (4) sections of the statute, (a) - (d),  in arguing that the Plaintiffs have not alleged sufficient facts and law to state a claim.  The Plaintiffs counter that assertion, contending that each Defendant received income and/or benefits from the Defendants' continuing use of mail and/or telephone fraud to collect fees from Meade County residents.  The Defendants correctly note that the Plaintiffs have not specified what section of RICO applies to this matter.  In addition, the Defendants contend that the RICO claims against the Defendants in their official capacities fail as a matter of law.  The Court shall address each section of RICO separately, as

6

well as the official capacity claims.

### Section 1962(a)

Section 1962(a) of RICO provides, in pertinent part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity...to use or invest, directly or indirectly, any part of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The Sixth Circuit Court of Appeals, in *Vemco, Inc. v. Camardella*, has held that "in order to state a claim under § 1962(a), a plaintiff must plead a specific injury to the plaintiff caused by the *investment* of income into the racketeering enterprise, distinct from any injuries caused by the predicate acts of racketeering."*Vemco, Inc. v. Camardella*, 23 F.3d 129, 132 (6th Cir. 1994)(emphasis added).  In *Vemco, Inc.*, the Court held that the plaintiff did not allege a proper claim under Section 1962(a) because the complaint failed to allege an injury that stemmed from the investment. *Id.* at 133.  The Court noted that the Sixth Circuit requires an "investment injury" in order to successfully allege a claim under Section 1962(a). *Id.*

In the instant matter, the Plaintiffs' complaint and more definite statement do not allege any investment into a racketeering enterprise that caused injuries to the Plaintiffs.  Though the Plaintiffs have stated that they suffered "financial damages" due to the alleged RICO violations, they have not specified an investment injury.  Accordingly, the Plaintiffs have not sufficiently alleged a claim under Section 1962(a).

### Section 1962(b)

Section 1962(b) of RICO provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly,

any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

"A violation of § 1962(b) requires that the RICO defendant acquire or maintain an interest in, or control of, an enterprise through (or by way of) the pattern of racketeering activity." *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 328 (6th Cir. 1999).  "[A] complaint for violation of § 1962(b) must allege an 'acquisition or maintenance' injury separate and apart from the injury suffered as a result of the predicate acts of racketeering activity." *Id.* at 329.  For a plaintiff to state a claim under Section 1962(b), a plaintiff must plead facts that establish that the Defendants: (1) acquired or maintained (2) through a pattern of racketeering activity or the collection of an unlawful debt; (3) an interest in or control of an enterprise; and (4) engaged in, or the activities of which affect, interstate or foreign commerce. *Id.* at 321.

To successfully allege a claim under Section 1962(b), "'a RICO plaintiff must demonstrate that the defendant's acquisition or control of an interstate enterprise injured [the] plaintiff.  In other words, injury from the racketeering acts themselves is not sufficient; rather, a plaintiff must plead facts tending to show that the acquisition or control of an interest injured [the] plaintiff.'" *Id.* at 330.  As such, the Plaintiffs must allege that they were harmed by the Defendants' acquisition or maintenance of MCSWD, and that the Plaintiffs acquired or maintained an interest in or control of MCSWD through racketeering activities or unlawful debt collection.

Here, the Plaintiffs have not established through its complaint, more definite statement and deposition testimony that the Defendants acquired and/or maintained an interest in MCSWD through racketeering or unlawful debt collection such that it injured the Plaintiffs.  MCSWD was

created pursuant to KRS 109.115, which permits counties in the Commonwealth of Kentucky to create waste management districts.  In his deposition, Plaintiff Phillips acknowledged that Meade County had a legal right to establish MCSWD.  This indicates that whatever control and/or interest the Defendants may have in MCSWD did not come from racketeering or unlawful debt collection, but from statutory authority.

Further, the Plaintiffs have not alleged any specific facts to support their claims as required by Section 1962(b). *See Auto Club Ins. Ass'n* at 328-29.  Here, the Plaintiffs have only stated conclusions, and have not set out with any detail how the Defendants went about acquiring or maintaining their interest in MCSWD. *Id.* at 329.  Thus, even assuming that the Plaintiffs have established a general claim under Section 1962(b) by alleging that the Defendants maintained control of MCSWD through the collection of unlawful debts via mail fraud and wire fraud that caused financial injuries to the Plaintiffs' business and property, the Plaintiffs have still not set out specific facts to support their allegations as required by Section 1962(b) and FRCP 9(b).  There are no direct references to or mentioning of any specific names, instances, dates, and/or transactions in the Plaintiffs' complaint to substantiate their claims.  Accordingly, the Plaintiffs have not sufficiently alleged a claim under Section 1962(b).

### Section 1962(c)

Section 1962(c) states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

In order to prove a violation of RICO, Section 1962(c), a Plaintiff must show: "1) that there were two or more predicate offenses; 2) that an "enterprise" existed; 3) that there was a nexus between

the pattern of racketeering activity and the enterprise; and 4) that an injury to business or property occurred as a result of the above three factors." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000).  "In addition, the Supreme Court has held that in order to be held responsible under [part (c) of] the Act, a defendant must have not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself. *See Reves v. Ernst & Young*, 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)." *Id.* "The alleged predicate acts may consist of offenses 'which are indictable' under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343). 18 U.S.C. § 1961(1)." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).  Additionally, the nexus requirement under Section 1962(c) mandates the plaintiff to articulate in what manner each of the Defendants' activities furthered the alleged racketeering scheme. *Whaley v. Auto Club Ins. Ass'n*, 129 F.3d 1266, *3 (6th Cir. 1997).  Lastly, the plaintiff must allege some evidence demonstrating a "chain of command" or "hierarchy" in order to show that the enterprise functioned as a "continuous unit." *VanDenBroeck* at 700 (citing *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)).

In the instant case, looking at the first element of the Section 1962(c) test, the Plaintiffs have alleged at least two (2) predicate offenses by stating that the Defendants committed mail fraud and wire fraud.  Further, in examining the second element, the Plaintiffs have sufficiently alleged that MCSWD was an enterprise for purposes of RICO.  In regards to the third and fourth elements, the Plaintiffs have not specified a nexus between the "pattern" of racketeering activities and MCSWD, in regards to who in particular committed the acts, and additionally, when exactly the acts took place.  Further, the Plaintiffs have not specified how their businesses

10

and property were injured by the Defendants' conduct.  Lastly, the Plaintiffs have not alleged a

chain of command and/or hierarchy in order to prove that MCSWD operated as a "continuous

unit."

Similar to the other claims under Section 1962, the Plaintiffs have not provided explicit

details of the alleged racketeering activities.  On the contrary, the Plaintiffs have alleged general

claims against the Defendants without specifying what each Defendant did and how they

participated in the alleged scheme.  Further, the Defendants have not provided any details

concerning the exact times when the alleged activities took place.  By asserting general claims,

the Plaintiffs have not abided by the requirements of alleging a claim under Section 1962.  In

looking at Section 1962(c), the Plaintiffs have not alleged with any specificity how the

Defendants' alleged mail and wire activities were related to the enterprise.  The Plaintiffs must

allege how each Defendant's participation supported the operation and/or management of the

enterprise. *See Reyes*, 507 U.S. at 183-84.  Here, the Plaintiffs have not alleged such facts.

Accordingly, the Plaintiffs have not sufficiently alleged a claim under Section 1962(c).

### *Section 1962(d)*

Section 1962(d) of RICO provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of
> subsection (a), (b), or (c) of this section.

In the instant case, the Plaintiffs have not alleged a conspiracy claim under RICO, as neither

their complaint nor more definite statement mentions the word conspiracy.  Accordingly, the

Plaintiffs have not sufficiently alleged a claim under Section 1962(d).

### *Official Capacity*

The Eleventh Amendment prohibits suits against state governments and officials acting in

11

their official capacity unless Congress has abrogated the sovereign immunity of the state. *Quern v. Jordan*, 440 U.S. 332, 341 (1979).  The United States Supreme Court, in *Will v. Michigan Dept. Of State Police*, a case arising from the Sixth Circuit, held that a "suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 67 (1989).  As such, a suit against a government agent in their official capacity equates to a suit against the government agency in question.  In *Ford Motor Co. v. Department of the Treasury*, the US Supreme Court held that the Eleventh Amendment prevents an award of money damages from a state treasury even if an individual officer is named as the defendant, and not the state. *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464 (1945).  However, the Eleventh Amendment does not preclude suits against state officers for money damages to be paid out of the officer's own pockets. *Kentucky v. Graham*, 473 U.S. 159 (1985).

In the instant matter, the claims against Defendants in their official capacities for money damages amounts to a claim against Meade County; a county that is a part of the Commonwealth of Kentucky.  As such, the claims brought against the Defendants in their official capacities that seek monetary damages are precluded by the Eleventh Amendment.  Accordingly, the RICO claims against the Defendants in their official capacities fail as a matter of law.

Based on the complaint, more definite statement and depositions, the Courts finds that the Plaintiffs have not alleged sufficient RICO claims against the Defendants.

### 3. Claims under 42 U.S.C. § 1983

For a plaintiff to assert a claim under Section 1983, "a plaintiff must allege the deprivation of a constitutional right caused by a person acting under [the] color of state law."

*Bell v. Ohio State University*, 351 F.3d 240, 248 (6th Cir. 2003)(*citing Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998)).  Here, the Plaintiffs allege that the Defendants deprived them of their rights guaranteed under the First Amendment, Fourth Amendment, Fifth Amendment, Ninth Amendment and Fourteenth Amendment.  In their motion, the Defendants contend that the Plaintiffs have failed to allege any allegations that give rise to a valid claim under Section 1983.  In particular, the Defendants argue that the Plaintiffs have merely raised conclusive allegations, but have not specifically outlined the alleged acts committed by the Defendants nor connected the law to the conduct of the Defendants.  In addition, the Defendants contend they have qualified immunity for the claims asserted against them in their official capacity.  The Court will address each alleged constitutional deprivation and official capacity claims separately.

### First Amendment Claims

The Plaintiffs contend that the Defendants inhibited the speech of Plaintiffs Phillips and Masterson by not allowing them to participate at MCSWD Board meetings; ignoring Phillips' grievances; being involved in the removal Phillips from a local radio call-in program on two (2) occasions; and not allowing them to speak out at Meade County Fiscal Court, where they were allegedly often told to "shut up and sit down" after they spoke.

In looking first at Phillips and Masterson's speech at the Meade County Fiscal Court and at MCSWD board meetings, the Sixth Circuit Court of Appeals and other jurisdictions have held that a courtroom is a nonpublic forum, and therefore, "less conducive to free speech rights." *Mezibov v. Allen*, 411 F.3d 712, 720 (6th Cir. 2005)(citing *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997); *see also United States v. Bader*, 698 F.2d 553, 556 (1st Cir.1983).  In addition,

13

board meetings of public entities are "limited public forums" for discussions of subjects relating only to the operation of the entity. *Featherstone v. Columbus City School Dist. Bd. of Educ.*, 92 Fed.Appx. 279, 282 (6th Cir. 2004). Further, a government board "may confine its meeting to specified subject matter...[and] place limitations on the time, place, and manner of access to such forums, so long as the restrictions are content neutral and narrowly tailored to serve a significant governmental interest. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45-46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)." *Featherstone* at 282.

The United States Supreme Court, in *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, has held that "speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 800 (1985). "[W]hen a plaintiff seeks to launch a First Amendment challenge addressed to a policy or practice that restricts expressive activity on public property, he must plead facts sufficient to show (1) that the government has burdened a protected form of speech, and (2) that the restriction is unreasonable (which, in a nonpublic forum, may involve showing that the restriction is biased, and, in public or limited public fora, may involve showing that it is not narrowly drawn to further a compelling state interest)." *Berner*, 129 F.3d at 26(citing *Cornelius* at 800).

Here, assuming that the Plaintiffs have sufficiently alleged that the Defendants may have burdened the speech of Plaintiffs Phillips and Masterson at the Fiscal Court and MCSWD board meetings, the Plaintiffs have not demonstrated that the restriction was unreasonable under the circumstances. The Plaintiffs have not alleged any bias on the part of the Defendants, nor have

14

the Plaintiffs shown why a state court and/or government board cannot restrict the speech of outsiders within their meetings under the circumstances.  Accordingly, the Court finds that the Meade County Fiscal Court and MCSWD board restricting the speech of Plaintiffs Phillips and Masterson did not violate their First Amendment rights.

In regards to Plaintiff Phillips being removed from two (2) radio call-in shows by what he alleges stemmed from the Defendants pressuring the radio station managers to remove him, and the claim that the Defendants did not respond to the grievances filed by the Plaintiffs, the Court finds that neither of these actions amount to a First Amendment violation.  In regards to the radio call-in shows, unless government owned, radio stations have a right to determine who may or may not speak on their radio stations without falling under the scrutiny of the First Amendment because a radio station does not qualify as the "government" for purposes of a First Amendment analysis. *See Cornelius* at 800.  Even assuming the radio station was government owned, public radio stations are not public forums for free speech purposes. *See Aldrich v. Knab*, 858 F.Supp. 1480, 1492-1494 (W.D. Wash. 1994). As such, radio stations have broad discretion in regulating the speech at their stations. *Id.*  Similar to their claims at the MCSWD meetings and Meade County Fiscal Court, the Plaintiffs have not alleged any bias on the part of the radio station who decided not to broadcast Plaintiff Phillips' discussions on its call-in programs.  Further, the fact that the Defendants have not responded to grievances filed by the Plaintiffs does not violate their First Amendment rights.  Accordingly, the Court finds that the Plaintiffs' First Amendment claims fail as a matter of law.

### *Fourth Amendment Claims*

The Plaintiffs contend that the Defendants unlawfully seized their property when the

15

Defendants billed them for solid waste collection and then unlawfully collected the Plaintiffs' garbage.  The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.  However, "the Fourth Amendment does not bar the warrantless search and seizure of trash put out for collection beyond the curtilage of the home. *See California v. Greenwood*, 486 U.S. 35, 37 (1988)." *Burns v. Bitnar,* 221 F.3d 1333, *2 (6th Cir. 2000).  As such, the Court finds that the Defendants did not violate the Plaintiffs' Fourth Amendment rights by seizing their garbage.

The seizure of taxes in the manner suggested by the Plaintiffs falls under the guise of Fifth Amendment and Fourteenth Amendment for government takings without due process, not the Fourth Amendment, which generally applies to government official actions in criminal and/or police matters. *See Coles v. Granville*, 448 F.3d 853, 860-861 (6th Cir. 2006). Accordingly, the Court finds that the Plaintiffs' claims that the Defendants seized their taxes under the Fourth Amendment fail as a matter of law for failure to state a claim upon which relief can be granted.  The Court will analyze the Plaintiffs' claims as to their taxes under the Fifth and Fourteenth Amendments.

### Fifth & Fourteenth Amendment Claims

The Plaintiffs have alleged takings clause, due process and equal protection clause claims against the Defendants under the Fifth and Fourteenth Amendment.  The Court will address each of these claims individually.

I) Takings Clause

The Fifth Amendment prohibits the government from taking private property without just compensation. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194,

16

105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).  However, "[a] takings claim is not ripe for review unless a property owner is denied just compensation [on the state level]." *Coles*, 448 F.3d at 860. As such, a Fifth Amendment just compensation claim is not ripe in federal court until the owner has pursued available state remedies and/or procedures to obtain just compensation. *Coles* at 861 (citing *Williamson*, 473 U.S. at 195).  This includes pursuing all "reasonable, certain and adequate procedures" for obtaining compensation. *Id.*; *see also  DLX, Inc. v. Kentucky*, 381 F.3d 511, 519-520 (6th Cir. 2004).  Here, the facts indicate that the Plaintiffs have not attempted to use state remedies to obtain their property that they allege was taken from them without just compensation, either through the state courts or other administrative agencies.  Accordingly, the Court finds that the Plaintiffs' taking clause claim lacks ripeness at this juncture, and therefore, is dismissed.

II) Due Process Claims

In order for the Plaintiffs to state a valid §1983 claim for denial of procedural and/or substantive due process, they have to demonstrate that their taxes were a property and/or liberty interest recognized by Kentucky state law (procedural due process) or the United States Constitution (substantive due process). *See Bell*, 351 F.3d at 248-250 (*citing Bd. Of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978); *Atkins v. Parker*, 472 U.S. 115, 129-31(1985)).  "The interests protected by substantive due process are of course much narrower than those protected by procedural due process." *Bell* at 249-250.

To succeed on their procedural due process claim under the Fourteenth Amendment, the Plaintiffs must show (1) that they were deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law. *Club Italia Soccer &*

17

*Sports Organization, Inc. v. Charter Tp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2004) (citing *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir.2002)).  Property interests under the Fourteenth Amendment are not created by the Constitution, but "by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 297(citing *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir.2001)).  When collecting taxes, due process requires that a taxpayer receive notice of the tax owed, but the taxpayer is not entitled to an administrative fact-finding hearing in order to satisfy the due process requirements under the Fourteenth Amendment. *See Cafeteria & Restaurant Workers, Local 473 v. McElroy*, 367 U.S. 886, 894-95, 81 S.Ct. 1743, 1748-49, 6 L.Ed.2d 1230 (1961).

Here, assuming that the taxes collected by the Defendants are a property interest recognized by the state, all the Defendants had to do was provide notice to the Plaintiffs before collecting the taxes.  The Plaintiffs have stated that the Defendants made them aware that they owed taxes to MCSWD by sending collection statements to the Plaintiffs.  The Court finds that these statements serve as proper notice under the Fourteenth Amendment.  Accordingly, the collection of taxes by Meade County took place with requisite due process of the law.

For the Plaintiffs to succeed on their substantive due process claim under the Fifth Amendment, the Plaintiffs must show that their property interest is protected by the United States Constitution. *Bell*, 351 F.3d at 248-250.  The Sixth Circuit Court of Appeals, in *Sutton v. Cleveland Bd. of Education*, held that a property or liberty interest under substantive due process must rise to "the level of a 'fundamental interest.'" *Sutton v. Cleveland Bd. of Education*, 958 F.2d 1339, 1350-51 (6th Cir. 1992).  However, courts have held that increasing and/or assessing

18

a tax does not violate substantive due process because increases and/or new assessments do not

"shock the conscience" under a substantive due process analysis. *See County of Sacramento v.*

*Lewis*, 523 U.S. 833, 846-849 (1998); *Brown v. City of Royal Oak, Mich.*, 2006 WL 2986499, *5

(6th Cir. 2006); *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004).

Therefore, the Court finds that the collection of taxes in this instance is not a property interest

recognized by the Constitution, and therefore, the Plaintiffs' substantive due process claim fails

as a matter of law.

III) Equal Protection Clause

When a §1983 plaintiff states a claim under the equal protection clause, the plaintiff must

prove by "requisite direct, circumstantial, or statistical evidence that he was the target of racial

profiling." *United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000).  This burden requires

more than speculation. *Id.* at 790.  In addition, the plaintiff must allege that the state official

intentionally discriminated against a member of a protected class. *LRL Properties v. Portage*

*Metro Housing Authority*, 55 F.3d 1097, 1111 (6th Cir. 1995) (*citing Henry v. Metropolitan*

*Sewer Dist.*, 922 F.3d 332, 341 (6th Cir. 1990)).

In the instant case, the Plaintiffs have not alleged that they have been the target of racial

profiling and/or that the Defendants intentionally discriminated against them.  Accordingly, the

Plaintiffs' equal protection clause claim fails as a matter of law.


***Ninth Amendment Claims***

The Ninth Amendment of the Constitution states that "the enumeration in the

Constitution, of certain rights, shall not be construed to deny or disparage others retained by the

people."  However, "the ninth amendment does not confer substantive rights in addition to those conferred by other portions of our governing law.  The ninth amendment 'was added to the Bill of Rights to ensure that the maxim *expressio unius est exclusio alterius* would not be used at a later time to deny fundamental rights merely because they were not specifically enumerated in the Constitution.' *Charles v. Brown*, 495 F.Supp. 862, 863-64 (N.D.Ala.1980)." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991).  In *Gibson*, the Sixth Circuit Court of Appeals determined that because the Ninth Amendment does not confer substantive rights other than "those conferred by other portions of our governing law," the plaintiff's Ninth Amendment claim had no merit. *Id.*  Here, similar to *Gibson*, the Court finds that the Plaintiffs' claims under the Ninth Amendment have no merit, and therefore, fail as a matter of law.

### *Official Capacity Claims*

As determined *supra* under the RICO analysis, any claims asserted by the Plaintiffs against the individual Defendants acting in their official capacities are precluded. *See Will*, 491 U.S. at 67.  Accordingly, the claims for money damages against the individual Defendants acting in their official capacities fail as a matter of law.

### 4. Claims under the Fair Debt Collection Practices Act

The Plaintiffs allege that the collection practices of the Defendants, which they claim included coercive confiscation of payments to which they were not entitled, violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1601, et. seq.  The purpose of the Fair Debt Collection Practices Act ("FDCPA") is:

> to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

20

15 U.S.C. § 1692(e).  "Congress enacted the FDCPA in order to eliminate 'the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.' 15 U.S.C. § 1692(a). The statute is very broad, and was intended to remedy 'what it considered to be a widespread problem.' *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir.1992)." *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).  Based on the Plaintiffs' complaint, it appears that the Plaintiffs have alleged that the Defendants violated Section 1692d, as the Plaintiffs claim that the Defendants used "coercive confiscation" to collect debts from the Plaintiffs.  However, as correctly pointed out by the Defendants, a debt collector under the statute does not include: "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." 15 U.S.C. § 1692a(6)(C).  As noted *supra*, the Defendants in this matter are state officials who are employed by Meade County, Kentucky.  These individuals have the authority to collect fees for waste disposal based on the statutory authority provided by KRS 109.041.  Therefore, the Plaintiffs' FDCPA claims against the Defendants fail as a matter of law.

Even assuming that the Defendants do qualify as "debt collectors" under the FDCPA as the Plaintiffs suggest, the Plaintiffs FDCPA claims would still warrant dismissal.  Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.  "In determining whether any particular conduct violates the FDCPA, the courts have used an objective test based on the least sophisticated consumer. *See Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir.1992)." *Harvey*, 453 F.3d at 329.  However, "[c]ourts have...dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not

21

have the natural consequence of harassing or abusing a debtor." *Id.* at 330.

In *Harvey*, the Sixth Circuit Court of Appeals affirmed the decision of the district court to dismiss the FDCPA claim of the plaintiff because the plaintiff had not sufficiently alleged that the defendant's conduct in collecting the debt amounted to harassing, abusing, or oppressing a debtor. *Id.* at 330-31. The Court reasoned that Congress intended to limit the claims that can come before the courts regarding the FDCPA. *Id.*

Here, the Plaintiffs have not alleged conduct by the Defendants that would amount to harassing, oppressive, and/or abusive tactics in collecting debt from the Plaintiffs. Section 1692d lists six (6) examples of the requisite conduct needed to support a claim under Section 1692d, which includes:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

The Plaintiffs have only alleged that the Defendants mailed them a bill. That action does not equate to harassing, oppressive or abusive conduct described in Section 1692d. Accordingly, even if the Defendants did qualify as debt collectors under the statute, the Plaintiffs claim would still require dismissal as a matter of law. *Harvey* at 330.

## CONCLUSION

22

For the foregoing reasons, the Defendants' Motion to Dismiss and/or Motion for Summary Judgment is **GRANTED**.  As such, the Plaintiffs' claims against the Defendants are **DISMISSED**.

An appropriate order shall issue.